**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **NATIONAL COMMUNITY PHARMACISTS ASSOCIATION** Plaintiff/ Counter-Claim Defendant | ) | |
| **v.** | ) | **Civil Action No. 1: 07cv1152-TSE/BRP** |
| **STRATEGIC DOMAIN, INC.** Defendant/ Counter-Claim Plaintiff | ) | |

**ANSWER & COUNTERCLAIM**

Defendant Strategic Domain, Inc., ("Strategic Domain"), by counsel, for its Answer to National Community Pharmacist Association's ("NCPA") Complaint respectfully states as follows:

1. Upon information and belief, the allegations in the first sentence of paragraph 1 are admitted. Strategic Domain lacks sufficient information to admit the allegations contained in the second sentence of paragraph 1 and, therefore, Strategic Domain denies the allegations.

2. Strategic Domain admits that it is a corporation with a principal place of business at 307 Seventh Avenue, 24th Floor, New York, New York 10001, and is not registered to do business in the Commonwealth of Virginia. Strategic Domain denies all further allegations contained in paragraph 2 of NCPA's Complaint.

3. Strategic Domain states that the allegations contained in paragraph 3 of NCPA's Complaint set forth conclusions of law to which no response is required.

4. Strategic Domain states that the allegations contained in paragraph 4 of NCPA's Complaint set forth conclusions of law to which no response is required.

5. Strategic Domain states that the allegations contained in paragraph 5 of NCPA's Complaint set forth conclusions of law to which no response is required.

6. Strategic Domain denies the allegations contained in paragraph 6 of NCPA's Complaint.

7. Strategic Domain admits that it constructed the website found at www.pharmacistelink.com. Strategic Domain denies all further allegations contained in paragraph 7 of NCPA's Complaint.

8. Strategic Domain admits that it purchased five (5) domain names on October 24, 2002, including www.pharmacistelink.com, www.pharmacistelink.org, www.pharmaciste-link.com, www.pharmaciste-link.org, and www.pharmacistelink.net (referred to collectively herein as "Domain Names"), with its own funds. Strategic Domain denies all further allegations contained in paragraph 8 of NCPA's Complaint.

9. Strategic Domain admits that the website www.pharmacistelink.com was launched on or about May 15, 2003. Strategic Domain denies the remaining allegations contained in paragraph 9 of NCPA's Complaint.

10. Strategic Domain admits that the website www.pharmacistelink.com offers a wide variety of tools and features to assist students, retail pharmacists, hospital pharmacists, and other individuals, including daily pharmacy and industry news updates, product news and highlights, disease-specific information, patient education materials, business calculators, pricing tools, continuing education and much more, consistent with Strategic Domain's initial concept and

design. Strategic Domain denies all further allegations contained in paragraph 10 of NCPA's Complaint.

11. Strategic Domain lacks sufficient information to admit the allegations contained in paragraph 11 of NCPA's Complaint and, therefore, Strategic Domain denies the allegations.

12. Strategic Domain lacks sufficient information to admit the allegations contained in paragraph 12 of NCPA's Complaint and, therefore, Strategic Domain denies the allegations.

13. Strategic Domain admits that the website www.pharmacistelink.com has become known within the pharmaceutical industry. Strategic Domain is without sufficient information or knowledge concerning the remaining allegations contained in paragraph 13 of NCPA's Complaint and therefore denies the same.

14. Strategic Domain admits that is not presently using any of the Domain Names, other than www.pharmacistelink.com, in connection with any business or service other than in partnership with NCPA. The allegations in paragraph 14 of NCPA's Complaint concerning Strategic Domain's entitlement to use the Domain Names sets forth conclusions of law to which no response is required. Strategic Domain denies all remaining allegations contained in paragraph 14 of NCPA's Complaint.

**NCPA's Pharmacists e-Link Registered Trademarks**

15. Strategic Domain lacks sufficient information to admit the allegations contained in paragraph 15 of NCPA's Complaint and, therefore, Strategic Domain denies the allegations.

16. Strategic Domain lacks sufficient information to admit the allegations contained in paragraph 16 of NCPA's Complaint and, therefore, Strategic Domain denies the allegations.

17. Strategic Domain lacks sufficient information to admit the allegations contained in paragraph 17 of NCPA's Complaint and, therefore, Strategic Domain denies the allegations.

18. Paragraph 18 of NCPA's Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Strategic Domain denies the allegations contained in paragraph 18 of NCPA's Complaint.

19. Paragraph 19 of NCPA's Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Strategic Domain denies the allegations contained in paragraph 19 of NCPA's Complaint.

20. Strategic Domain admits that NCPA requested transfer of the URL www.pharmacistelink.com to a third party, Mirixa Corporation ("Mirixa"). Strategic Domain denies all further allegations contained in paragraph 20 of NCPA's Complaint.

21. Strategic Domain admits that it did not transfer the Domain Names to Mirixa. Strategic Domain denies all further allegations contained in paragraph 21 of NCPA's Complaint.

22. Strategic Domain admits that Rick Robinson sent a letter dated September 11, 2007, to Todd Dankmyer regarding the transfer of the URL www.pharmacistelink.com. Strategic Domain denies all further allegations contained in paragraph 22 of NCPA's Complaint to the extent they are inconsistent with the letter.

23. Strategic Domain admits that it has not transferred the Domain Names to NCPA or Mirixa. Strategic Domain denies all further allegations contained in paragraph 23 of NCPA's Complaint.

24. Strategic Domain restates and incorporates all of its responses to NCPA's allegations previously set forth as if fully rewritten herein.

25. Strategic Domain admits a controversy exists between it and NCPA with respect to the nature of the parties' partnership, the ownership of the Domain Names and the copyright

rights to the www.pharmacistelink.com website and associated software. Strategic Domain denies all further allegations contained in paragraph 25 of NCPA's Complaint.

26. Strategic Domain admits a controversy exists between it and NCPA with respect to the costs set forth in the September 11, 2007 letter. Strategic Domain denies all further allegations contained in paragraph 26 of NCPA's Complaint.

27. Strategic Domain admits a controversy exists between it and NCPA with respect to the remaining financial rights and obligations of the parties with regard to the construction and maintenance of the www.pharamacistelink.com website. Strategic Domain denies all further allegations contained in paragraph 27 of NCPA's Complaint.

28. Strategic Domain states that the allegations contained in paragraph 28 of NCPA's Complaint set forth conclusions of law to which no response is required.

29. Strategic Domain restates and incorporates all of its responses to NCPA's allegations previously set forth as if fully rewritten herein.

30. Strategic Domain admits that it purchased the Domain Names and constructed and maintained the website found at the URL www.pharamacistelink.com. Strategic Domain avers that it purchased the Domain Names with its own funds, and constructed and maintained the website at a reduced rate, or without charging, based upon NCPA's representations that Strategic Domain was a partner of NCPA for the website. The remaining allegations in paragraph 30 of NCPA's Complaint are denied.

31. Strategic Domain denies the allegations contained in paragraph 31 of NCPA's Complaint.

32. Strategic Domain admits that it has not transferred the Domain Name registrations to NCPA. Strategic Domain further admits that it is owed money by NCPA. The remaining allegations contained in paragraph 32 of NCPA's Complaint are denied.

33. Strategic Domain denies the allegations contained in paragraph 33 of NCPA's Complaint.

34. Strategic Domain denies the allegations contained in paragraph 34 of NCPA's Complaint.

35. To the extent answered, Strategic Domain denies NCPA's allegations and demands strict proof thereof. Further, Strategic Domain denies that NCPA is entitled to the relief stated in its prayer for relief.

## AFFIRMATIVE DEFENSES

36. NCPA's claims are barred by its own fraud and bad faith.

37. NCPA's claims are barred by the doctrines of estoppel and waiver.

38. In the event there was a contract, NCPA committed the first breach thereof and therefore is barred from recovery.

Strategic Domain reserves the right to raise any additional affirmative defenses revealed during discovery.

## COUNTERCLAIM

Defendant Strategic Domain, Inc. ("Strategic Domain"), by counsel, for its Counterclaim against National Community Pharmacists Association ("NCPA") states as follows:

## PARTIES

1. Strategic Domain is a Delaware Corporation with its place of business located at 307 Seventh Avenue, 24th Floor, New York, New York 10001. Strategic Domain is engaged in the business of creating, developing, promoting, and maintaining websites.

2. Upon information and belief, NCPA is an association of independent pharmacist owners, managers, and employees with its principal place of business at 100 Daingerfield Road, Alexandria, Virginia 22314.

3. This Court has jurisdiction over the subject matter and parties to this counterclaim, and venue is proper in this Division.

## STATEMENT OF FACTS

4. Strategic Domain was formed in 1998, and was and has been engaged in the business of creating, developing, promoting, and maintaining websites. Strategic Domain has received forty-four (44) industry based awards for superior industry excellence in developing websites for national and international companies.

5. Prior to becoming involved with NCPA, Strategic Domain had created, developed, promoted, and maintained numerous websites for both United States and global companies.

6. On or about June 14, 2002, NCPA engaged Strategic Domain to create, build, and maintain NCPA's primary trade association website, located at www.ncpanet.org.

7. From approximately June to October of 2002, Strategic Domain designed, built, and prepared NCPA's primary trade association website.

8. On or about September 5, 2002, during a meeting among representatives of Strategic Domain and NCPA, Strategic Domain presented the concept to NCPA of a separate, new website that would provide services to a customer base beyond NCPA's membership.

Strategic Domain proposed inviting corporate sponsors to advertise on the proposed website with the intention of generating substantial revenue for Strategic Domain and NCPA.

9. NCPA represented that it did not have sufficient funds to pay Strategic Domain to develop, maintain, and market the website proposed by Strategic Domain. Strategic Domain proposed that Strategic Domain and NCPA enter into a partnership to share in the expenses for developing the website and share the revenue once the website was developed and implemented.

10. NCPA agreed to enter into a partnership with Strategic Domain to develop, maintain and market the proposed website.

11. On or about October 1, 2002, Rick Robinson of Strategic Domain sent a letter to Todd Dankmyer, then a Senior Vice President of NCPA, outlining the scope of work for the development of a model representative of the proposed website, which would ultimately become www.pharmacistelink.com (hereinafter "website"). In the letter, Robinson states the "overall direct-cost estimate and design time for this demonstration site will probably exceed $35,000. As your partner in this effort, we propose to share th[ese] costs equally."

12. Mr. Dankmyer of NCPA approved the proposal outlined in Mr. Robinson's October 1, 2002, letter, thereby acknowledging that NCPA and Strategic Domain would be partners.

13. In October 2002, in reliance upon NCPA's approval and promise that Strategic Domain would be NCPA's partner, Strategic Domain began to design and develop a demonstration website.

14. On or about October 24, 2002, Strategic Domain purchased the Domain Names www.pharmacistelink.com, www.pharmacistelink.org, www.pharmaciste-link.com, www.pharmaciste-link.org, and www.pharmacistelink.net (collectively "Domain Names"), with its own funds. The Domain Names were registered in Strategic Domain's name.

15. The Domain Names were created by and put into use by Strategic Domain. Strategic Domain never received nor requested any reimbursement from NCPA for the purchase of the Domain Names.

16. NCPA knew that Strategic Domain purchased the Domain Names and registered them in Strategic Domain's name. During the course of the parties' relationship, and up until September of 2007, NCPA did not contest Strategic Domain's ownership or rights to the Domain Names.

17. On or about October 18-24, 2002, Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Nashville, Tennessee, at the request of NCPA. NCPA held out Strategic Domain as its partner to NCPA's members, corporate sponsors, show attendees, and staff. During the convention, without compensation and in reliance on NCPA's promises that Strategic Domain was NCPA's partner, Mr. Peroff and Mr. Robinson of Strategic Domain promoted the proposed website by conducting marketing presentations, conducting sponsor promotions, and making sales calls.

18. As a result of the successful introduction and demonstration of the new website concept at the convention, Strategic Domain and NCPA agreed to go forward with the development and marketing of the website.

19. During the period of January 2003 to April 2003 representatives of Strategic Domain and NCPA attended meetings with potential corporate sponsors for the website, including Eli Lilly, Pfizer, and Purdue Pharmaceutical. Strategic Domain also sent proposals to potential corporate sponsors, at NCPA's request, including Mylan Pharmaceutical, Pfizer, and Purdue Pharmaceutical. At the meetings and in the proposals, NCPA held Strategic Domain out as its partner.

20. During this time, Strategic Domain was creating the website's schematics, technology system designs, architectures, integration of content feeds, designs and layouts for interfaces, along with content plans.

21. Strategic Domain engaged in the above activities in reliance on NCPA's representations that Strategic Domain and NCPA were partners.

22. On or about April 10, 2003, Strategic Domain and NCPA representatives had a meeting to address the business plan for the launch of the website, and further development and marketing of the website. Strategic Domain reaffirmed with NCPA that they were partners sharing in the expenses and the revenues of the website and, as a consequence, Strategic Domain agreed to significantly reduce the rates that it normally charged for its services to develop, market, and maintain websites. NCPA agreed to the business plan as presented. NCPA also agreed to the mutual duties and obligations of the parties as set out in the business plan. The foregoing partnership business plan was confirmed in a subsequent meeting with the Executive Vice President Bruce Roberts of NCPA on or about May 7, 2003.

23. Strategic Domain agreed to significantly reduce its rates based upon NCPA's representations and agreements that Strategic Domain and NCPA were partners.

24. Thereafter, in continued reliance on NCPA's representations that Strategic Domain and NCPA were partners, Strategic Domain continued to develop and market the website consistent with the business plan.

25. On or about May 15, 2003, the website was launched by Strategic Domain under the URL www.pharamacistelink.com.

26. Once the website was launched, Strategic Domain continued to create, develop, design, and improve the content of the website, and handled the creation, design, lay out,

programming, and compilation of text for the newsletter to be provided to members of the website. Strategic Domain also engaged in prospecting, contacting, developing, and contracting with sponsors in a sales and marketing program to make the website profitable.

27. On or about October 17-22, 2003, Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Seattle, Washington, at the request of NCPA. NCPA's representatives again held out Strategic Domain as its partner with respect to the website to NCPA's members, corporate sponsors, show attendees, and staff.

28. Strategic Domain was not compensated for their representatives to attend the Seattle convention where Strategic Domain promoted the website, conducted marketing presentations, conducted sponsor promotions, and made sales calls. Strategic Domain attended the conference in reliance upon NCPA's representations that NCPA and Strategic Domain were partners.

29. Over the course of the following years, at the request and with the acquiescence of NCPA, Strategic Domain continued to send proposals to numerous companies regarding potential sponsorship on the website. Each time NCPA and Strategic Domain held themselves out to the potential sponsors as partners. Strategic Domain prepared the proposals without being compensated by NCPA in reliance on NCPA's continued representations that Strategic Domain was its partner.

30. On or about October 9-13, 2004, Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Boston, Massachusetts, at the request of NCPA. During the convention, NCPA again held out Strategic Domain as its partner to NCPA's members, corporate sponsors, show attendees, and staff.

31. Strategic Domain was not compensated for their representatives to attend the Boston convention where Strategic Domain promoted the website, conducted marketing

presentations, conducted sponsor promotions, and made sales calls. Strategic Domain attended the conference in reliance upon NCPA's representations that NCPA and Strategic Domain were partners.

32. On or about March 21, 2005, Mr. Peroff and Mr. Robinson of Strategic Domain met with Mr. Dankmyer and Bruce Roberts of NCPA to discuss the status of the website and their partnership. During the course of the March 21, 2005, meeting, Strategic Domain addressed the additional work hours it had invested at the request of NCPA in the development, marketing, and maintenance of the website during 2003-2004, beyond the scope of what was initially contemplated. NCPA informed Strategic Domain that the costs Strategic Domain had incurred beyond the out of scope requests were part of working in a partnership. During the meeting, NCPA represented that the website was not yet profitable, and therefore there were no profits to share.

33. In reliance upon NCPA's continued representations and assurances that NCPA and Strategic Domain were partners, Strategic Domain continued to provide reduced rate services, marketing, and sales support at a substantially reduced rate or, on many occasions, without charge.

34. On or about October 14-19, 2005, Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Ft. Lauderdale, Florida, at the request of NCPA. During the convention, NCPA's representatives again held out Strategic Domain as its marketing partner to NCPA's members, corporate sponsors, show attendees, and staff.

35. Strategic Domain was not compensated for their representatives to attend the Ft. Lauderdale convention where Strategic Domain promoted the website, conducted marketing presentations, conducted sponsor promotions, and made sales calls. Strategic Domain attended

the conference in reliance upon NCPA's representations that NCPA and Strategic Domain were partners.

36. Sometime in the spring of 2006, Strategic Domain learned that the website had become profitable. Prior to this time, when Strategic Domain requested financial information regarding the website, NCPA had represented that it was not profitable.

37. On or about July 19, 2006, Strategic Domain and NCPA representatives met to discuss the status of the website and the website's revenue. During the meeting, Mr. Dankmyer of NCPA advised Strategic Domain that he would discuss with the Executive Vice President of NCPA Strategic Domain's demand that the revenue of the website be shared as pursuant to the partnership.

38. Thereafter, NCPA continued to hold Strategic Domain out as its partner, and in reliance thereon, Strategic Domain continued to provide marketing and maintenance services for the website at a reduced rate.

39. Ultimately, in the late winter of 2006 or early spring of 2007, NCPA took actions indicating that, notwithstanding its prior representations and course of dealing between the parties, it had no intention of honoring the partnership and sharing the profits from the website with Strategic Domain.

40. On March 1, 2007, Mr. Dankmyer of NCPA e-mailed Mr. Robinson and Mr. Peroff advising them that NCPA intended to transfer the responsibilities of newsletter production and regular updates of the website from Strategic Domain to NCPA's in-house project manager, Robert Johnson, effective April 1, 2007.

41. In early September of 2007, NCPA requested that Strategic Domain transfer the www.pharamacistelink.com domain name to an entity known as Mirixa Corporation. Upon information and belief, Mirixa Corporation is an affiliate of NCPA.

42. Despite Strategic Domain's requests, NCPA refused to share any of the profits from the website or to pay Strategic Domain for the reasonable value of its services in developing and maintaining the website. Further, notwithstanding all of its prior representations and assurances, NCPA refused to recognize Strategic Domain as its partner.

43. On or about November 13, 2007, NCPA filed the complaint that initiated this lawsuit.

**COUNT I (Declaratory Judgment Action)**

44. The allegations of Paragraphs 1 through 43 are incorporated herein.

45. An actual controversy exists between NCPA and Strategic Domain regarding the existence of a partnership and the right to share the profits generated by the website, the ownership of the Domain Names, and the ownership of the website.

46. Declaratory relief from the Court, pursuant to 28 U.S.C. § 2201, will resolve the dispute and controversy between Strategic Domain and NCPA regarding their legal relationship, the ownership rights of the Domain Names, and the copyright rights to the website.

WHEREFORE, Strategic Domain requests for a declaration as follows:

a. That a partnership exists between NCPA and Strategic Domain with respect to the website, and that Strategic Domain has the right to share in the profits generated from the website www.pharmacistelink.com.

b. Declaring the ownership rights of the parties in the Domain Names.

c. Declaring that:

i. Strategic Domain is the owner of the copyright and intellectual property rights to the website, with all attendant rights of sole ownership; or alternatively,

ii. That the website is a joint work under 17 U.S.C. § 101, entitling Strategic Domain to all attendant rights and benefits as joint owner, including an accounting and sharing of profits earned by NCPA from the website.

Strategic Domain requests such further relief as the Court deems just and proper.

**COUNT II (Fraud)**

47. The allegations in Paragraphs 1 through 43 are incorporated herein by reference.

48. As set forth more fully above, through the course of the business relationship, NCPA represented to Strategic Domain and others that Strategic Domain was a partner, and engaged in a course of conduct to lead Strategic Domain to believe it was a partner, that Strategic Domain would share in the revenue generated from the website, and that Strategic Domain would have all other rights of a partner.

49. In reliance on NCPA's representations and actions, Strategic Domain agreed to provide services for the development, maintenance, and marketing of the website at substantially reduced rates, or without charge.

50. NCPA continued to hold Strategic Domain out as its partner, knowing that Strategic Domain was relying on the existence of the partnership and expected to share in the revenue generated from the partnership as a partner, in order to induce Strategic Domain to develop, market, and maintain the website at substantially reduced rates or without charge to NCPA.

51. Strategic Domain relied on NCPA's representations and conduct in providing such services at substantially reduced rates, and on many occasions, without charge.

52. Upon information and belief, NCPA never intended that Strategic Domain be a partner sharing in the profits of the website, notwithstanding NCPA's representations and actions to the contrary.

53. As a direct and proximate result of NCPA's fraudulent representations, Strategic Domain has incurred damages for loss of revenue, costs, expenses, attorney fees, and other amounts.

WHEREFORE, Strategic Domain requests as follows:

a. Damages of at least $1.8 million or such other amount proven at trial;

b. Punitive damages of $1.0 million;

c. Attorneys' fees; and

d. Such further relief as the court deems is just and proper.

**COUNT III (Implied Contract/Quantum Meruit)**

54. The allegations in Paragraphs 1 through 43 are incorporated herein by reference.

55. Strategic Domain rendered valuable services to NCPA in the form of creating, developing, promoting, maintaining, and marketing the website.

56. On numerous occasions, NCPA requested and accepted these valuable services from Strategic Domain knowing that Strategic Domain expected to be compensated by NCPA for the value of those services.

57. NCPA benefited from Strategic Domain's services through the creation, development, promotion, and maintenance of the website.

58. NCPA has not paid Strategic Domain for the full value of services rendered by Strategic Domain. Strategic Domain is entitled to be paid by NCPA for the full value of the services it rendered to NCPA for the website.

WHEREFORE, Strategic Domain requests damages of at least $1.8 million or such other amount proven at trial, and such further relief as the court deems is just and proper.

**JURY DEMAND**

Strategic Domain respectfully requests a jury trial for all claims in NCPA's Complaint and Counterclaims by Strategic Domain that are triable before a jury.

Respectfully Submitted,

STRATEGIC DOMAIN, INC.

/s/_________________________

R. Scott Caulkins (Va. Bar No. 23584)
LeCLAIRRYAN, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
Telephone: (703) 684-8007
Facsimile: (703) 684-8075
Scott.Caulkins@leclairryan.com

Sarah E. Moffett (Va. Bar No. 72208)
LeCLAIRRYAN, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
Telephone: (703) 684-8007
Facsimile: (703) 647-5980
Sarah.Moffett@leclairryan.com
***Counsel for Strategic Domain, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of December, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following:

John D. Wilburn (Va. Bar No. 41141)
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, VA 22102
Telephone: (703) 712-5000
Facsimile: (703) 712-5220
jwilburn@mccguirewoods.com

Anand V. Ramana (Va. Bar No. 65852)
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, VA 22102
Telephone: (703) 712-5000
Facsimile: (703) 712-5220
aramana@mcguirewoods.com

/s/_________________________
Sarah E. Moffett (Va. Bar No. 72208)
LeCLAIRRYAN, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
Telephone: (703) 684-8007
Facsimile: (703) 647-5980
Sarah.Moffett@leclairryan.com
***Counsel for Strategic Domain, Inc.***