**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| NATIONAL COMMUNITY PHARMACISTS ASSOCIATION,<br>*Plaintiff*,<br>v.<br>STRATEGIC DOMAIN, INC.,<br>*Defendant*. | Civil Action No. 1:07cv1152 (TSE/BRP) |

**PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM**

Plaintiff National Community Pharmacists Association ("NCPA"), by counsel and pursuant to Rule 12(a)(2) of the Federal Rules of Civil Procedure and this Court's January 16, 2008 Order, hereby answers the counterclaim ("Counterclaim") filed by Defendant Strategic Domain, Inc. ("Strategic Domain") in the above-captioned matter.

PARTIES

1. NCPA admits the allegations contained in Paragraph 1 of the Counterclaim upon information and belief.

2. NCPA admits the allegations contained in Paragraph 2 of the Counterclaim.

3. NCPA admits that this Court currently has subject matter jurisdiction over the claims asserted in the Counterclaim, and admits that this Court has personal jurisdiction over the parties to this counterclaim. NCPA admits that venue is proper.

STATEMENT OF FACTS

4. NCPA is without sufficient information to admit or deny the allegations contained in Paragraph 4 of the Counterclaim, so it denies and demands strict proof of such allegations.

5. NCPA is without sufficient information to admit or deny the allegations contained in Paragraph 5 of the Counterclaim, so it denies and demands strict proof of such allegations.

6. NCPA admits in part and denies in part the allegations contained in Paragraph 6 of the Counterclaim. NCPA admits that NCPA contracted with and paid for Strategic Domain to assist in the creation, building, and maintenance of NCPA's trade association website, www.ncpanet.org. NCPA denies that NCPA did not have an active role in the creation, building, and maintenance of the website.

7. NCPA admits in part and denies in part the allegations contained in Paragraph 7 of the Counterclaim. NCPA admits that Strategic Domain and NCPA worked together to design, build, and prepare NCPA's primary trade association website. NCPA denies that NCPA did not have an active role in the design, building, and preparation of the website.

8. NCPA admits that NCPA and Strategic Domain met in or around September 2002 to discuss the creation of a separate, new website that would provide services to a customer base beyond NCPA's membership. NCPA denies that Strategic Domain created the concept of the new website. NCPA, and not Strategic Domain, created the concept of a new website. Strategic Domain's role was to implement NCPA's concept by performing the technical services in developing the website.

9. NCPA denies that it did not have access to sufficient funds to pay Strategic Domain to help develop, maintain, and market the website. NCPA denies that Strategic Domain proposed the website. NCPA admits that Strategic Domain proposed that it and NCPA enter into a contract whereby Strategic Domain would "discount" its rates and costs for NCPA, but denies that NCPA and Strategic Domain ever agreed that they would share any revenue generated by the website once the website was developed and implemented.

10. NCPA denies the allegations contained in Paragraph 10 of the Counterclaim.

11. NCPA states that the document referenced in Paragraph 11 speaks for itself and not as Strategic Domain may characterize it. NCPA denies any remaining allegations contained in Paragraph 11 of the Counterclaim.

12. NCPA is without sufficient information as to admit or deny the allegations contained in Paragraph 12 of the Counterclaim, and therefore denies and demands strict proof of such allegations.

13. NCPA admits that Strategic Domain began developing a demonstration website in or around October 2002, but denies that Strategic Domain did so in reliance on any promise that Strategic Domain would be NCPA's "partner." Strategic Domain developed a demonstration website based on an express oral contract between NCPA and Strategic Domain.

14. NCPA admits that Strategic Domain purchased the domain names www.pharmacistelink.com, www.pharmacistelink.org, www.pharmaciste-link.com, www.pharmaciste-link.org, and www.pharmacistelink.net in or around October 24, 2002. NCPA admits that Strategic Domain registered the Domain Names in its own name, but did so in breach of the contract between NCPA and Strategic Domain. NCPA denies that it required Strategic Domain to register the Domain Names with its own funds; such fees were expenses pursuant to the contract and should have been billed to NCPA.

15. NCPA admits that Strategic Domain registered and activated the Domain Names, but the registration and activation were done so on behalf of NCPA and pursuant to the contract. NCPA is without sufficient information to admit or deny the remaining allegations of Paragraph 15 of the Counterclaim, so NCPA denies and demands strict proof of such allegations.

16. NCPA admits that it knew that Strategic Domain registered the Domain Names, but denies that it knew that Strategic Domain registered them in the name of Strategic Domain, and not in the name of NCPA. NCPA admits that it did not discuss the ownership and rights associated with the Domain Names until Spring of 2007 because NCPA did not know that Strategic Domain had registered the Domain Names in its own name until that time. NCPA objected to Strategic Domain's failure to register the Domain Names in NCPA's name when it discovered that it had not.

17. NCPA admits that Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Nashville, Tennessee, in October 2002, at NCPA's request. NCPA denies that it held out Strategic Domain as its "partner" to NCPA's members, corporate sponsors, show attendees, and staff. Strategic Domain's purpose was to assist with NCPA's announcement of the *Pharmacist E-Link* website launch. NCPA denies that it did not compensate Strategic Domain for its involvement in the NCPA convention in Nashville. NCPA denies that Strategic Domain helped promote the proposed website in reliance on any agreement that it was NCPA's partner because NCPA never agreed that Strategic Domain was anything other than a party to a services contract with no entitlement to any revenue sharing. NCPA admits that Strategic Domain conducted marketing presentations, made some sponsor promotions, and made some sales calls pursuant to its contract with NCPA.

18. NCPA admits that it and Strategic Domain agreed to continue developing the website after the Nashville convention. NCPA denies any causal connection between the decision to continue developing the website and "the successful introduction and demonstration of the new website concept at the convention."

19. NCPA denies that it ever held out Strategic Domain as a "partner" at any meetings. NCPA held Strategic Domain out as a website design and maintenance services contractor. NCPA admits the remaining allegations contained in Paragraph 19 of the Counterclaim.

20. NCPA denies that Strategic Domain, and only Strategic Domain, created the website's schematics, technology system designs, architectures, integration of content feeds, designs and layouts for interfaces, and content plans. Strategic Domain performed all of the tasks in collaboration with NCPA and pursuant to its contract with NCPA.

21. NCPA denies the allegations contained in Paragraph 21 of the Counterclaim.

22. NCPA denies that it ever agreed to share any revenues from the website with Strategic Domain, and therefore NCPA denies that Strategic Domain relied on any agreement. NCPA agrees that it met with Strategic Domain in or around April 2003 to address the launch of the website, and admits that NCPA and Strategic Domain generally agreed on a plan for launch of the website. NCPA denies that it was ever a "partner" with Strategic Domain. NCPA denies any remaining allegations contained in Paragraph 22 of the Counterclaim.

23. NCPA denies the allegations contained in Paragraph 23 of the Counterclaim.

24. NCPA denies that it ever represented that Strategic Domain was its "partner," and therefore denies that Strategic Domain relied on any such representations. NCPA admits that Strategic Domain assisted in the development and marketing of the website, but states that the development and marketing was done in collaboration with NCPA.

25. NCPA admits that Strategic Domain's contracted work was completed and released by NCPA to the pharmacy community in or around May 2003. NCPA denies any remaining allegations contained in Paragraph 25 of the Counterclaim.

26. NCPA admits that Strategic Domain assisted in the creation, development, designing, and improving of the content of the website, but states that all of these tasks were done in collaboration with NCPA, and with contributions from NCPA. NCPA drove the concepts for content, and Strategic Domain performed the technological services to implement NCPA's concepts. NCPA admits that Strategic Domain attempted to prospect, contact, develop, and contract with sponsors, but denies that Strategic Domain was successful. NCPA denies any remaining allegations contained in Paragraph 26 of the Counterclaim.

27. NCPA admits that Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Seattle, Washington, in October 2003, at the request of NCPA. NCPA denies that it held out Strategic Domain as its "partner" at the Seattle conference to NCPA's members, corporate sponsors, show attendees, and staff.

28. NCPA denies the allegations contained in Paragraph 28 of the Counterclaim.

29. NCPA admits that Strategic Domain, in collaboration with NCPA, periodically sent proposals to companies regarding potential sponsorship of the website. NCPA denies that it ever held Strategic Domain out as a "partner." NCPA denies the remaining allegations contained in Paragraph 29 of the Counterclaim.

30. NCPA admits that Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Boston, Massachusetts, in October 2004, at the request of NCPA. NCPA denies that it held out Strategic Domain as its "partner" at the Boston conference to NCPA's members, corporate sponsors, show attendees, and staff.

31. NCPA denies the allegations contained in Paragraph 31 of the Counterclaim.

32. NCPA admits that Strategic Domain and NCPA met in March 2005 to discuss their ongoing contractual relationship. NCPA admits that Strategic Domain informed NCPA that

it sought more compensation from NCPA. NCPA denies the remaining allegations contained in Paragraph 32 of the Counterclaim.

33. NCPA admits that Strategic Domain continued to provide services to NCPA for the contracted compensation. NCPA is without information to admit or deny the remaining allegations contained in Paragraph 33 of the Counterclaim, and therefore denies and demands strict proof of such allegations.

34. NCPA admits that Mr. Peroff and Mr. Robinson of Strategic Domain attended NCPA's convention in Fort Lauderdale, Florida, in October 2005, at the request of NCPA. NCPA denies that it held out Strategic Domain as its "partner" at the Boston conference to NCPA's members, corporate sponsors, show attendees, and staff.

35. NCPA denies the allegations contained in Paragraph 35 of the Counterclaim.

36. NCPA is without sufficient information to admit or deny the allegations contained in Paragraph 36 of the Counterclaim, and therefore denies and demands strict proof of such allegations.

37. NCPA admits that Strategic Domain and NCPA met in July 2006 and discussed their ongoing relationship. NCPA denies that Strategic Domain was ever entitled to revenue sharing under their contract, and denies the remaining allegations contained in Paragraph 37 of the Counterclaim.

38. NCPA admits that Strategic Domain, in collaboration with NCPA, provided some marketing and maintenance services. NCPA denies that NCPA ever held Strategic Domain out as a "partner." NCPA is without sufficient information to admit or deny the remaining allegations contained in Paragraph 37 of the Counterclaim, and therefore denies and demands strict proof of such allegations.

39. NCPA denies that it ever had any obligation to share profits derived from the website with Strategic Domain. NCPA is without sufficient information to admit or deny the remaining allegations contained in Paragraph 39 of the Counterclaim because it is unclear what the "actions" means. NCPA therefore denies and demands strict proof of such allegations.

40. NCPA states that the document reference in Paragraph 40 speaks for itself and not as Strategic Domain may characterize it.

41. NCPA admits that it requested that Strategic Domain transfer to Mirixa Corporation the Domain Names to NCPA upon its discovery that Strategic Domain registered the Domain Names in its own name, and not in the name of NCPA. NCPA admits that Mirixa Corporation is an affiliate of NCPA.

42. NCPA admits that it never recognized Strategic Domain as a "partner." NCPA denies that Strategic Domain has ever had any entitlement to share any of the profits from the website, and denies that it did not pay Strategic Domain the reasonable value of its services because it paid Strategic Domain the contracted rate. NCPA denies any remaining allegations contained in Paragraph 42 of the Counterclaim.

43. NCPA admits the allegations contained in Paragraph 43 of the Counterclaim.

44. NCPA denies all allegations not expressly admitted in this Answer to Counterclaim.

## COUNT I
(Declaratory Judgment Action)

45. NCPA incorporates its responses to Paragraphs 1 through 43 of the Counterclaim herein.

46. NCPA admits that an actual controversy exists regarding whether Strategic Domain is entitled to a share the profits generated by NCPA's website with NCPA. NCPA

denies that an actual controversy exists between NCPA and Strategic Domain regarding the ownership of the Domain Names or the ownership of the website. Strategic Domain has never asserted a claim of ownership right over the Domain Names or the website.

47. NCPA admits that declaratory relief will resolve the dispute and controversy regarding whether Strategic Domain is entitled to a share with NCPA the profits generated by the Pharmacist E-Link website. NCPA denies that declaratory relief will resolve any dispute and controversy regarding the ownership of the Domain Names or the ownership of the website because there are no such controversies. Furthermore, NCPA denies that declaratory relief will resolve any dispute and controversy regarding the ownership the copyright rights of the website because there is no such controversy.

WHEREFORE, NCPA respectfully requests that this Court:

a. declare, adjudge, and decree that Strategic Domain is not entitled to any share in the profits generated from NCPA's website located at the Domain Names;

b. declare, adjudge, and decree that the Domain Names are owned by NCPA and not Strategic Domain;

c. declare, adjudge, and decree that any copyright or intellectual property rights to the website, with all attendant rights of sole ownership, are owned by NCPA and not Strategic Domain;

d. declare, adjudge, and decree that the website located at the Domain Names is not a joint work under 17 U.S.C. § 101, nor does Strategic Domain have any right and benefits to any shared profits earned by NCPA from the website; and

e. award any other relief that it deems just and proper.

<u>COUNT II</u>
(Fraud)

48. NCPA incorporates its responses to Paragraphs 1 through 43 of the Counterclaim herein.

48.-53. NCPA states that its response to the allegations contained in Paragraphs 48-53 of the Counterclaim is asserted in Plaintiff's Motion to Dismiss and Plaintiff's Memorandum in Support of Motion to Dismiss filed with this Court on February 1, 2008.

WHEREFORE, NCPA respectfully requests that this Court:

a. dismiss Count II with prejudice for the reasons stated in Plaintiff's Motion to Dismiss and Plaintiff's Memorandum in Support of Motion to Dismiss filed with this Court on February 1, 2008; and

b. award any other relief that it deems just and proper.

<u>COUNT III</u>
(Implied Contract/*Quantum Meruit*)

54. NCPA incorporates its responses to Paragraphs 1 through 43 of the Counterclaim herein.

55.-58. NCPA states that its response to the allegations contained in Paragraphs 55-58 of the Counterclaim is asserted in Plaintiff's Motion to Dismiss and Plaintiff's Memorandum in Support of Motion to Dismiss filed with this Court on February 1, 2008.

WHEREFORE, NCPA respectfully requests that this Court:

c. dismiss Count III with prejudice for the reasons stated in Plaintiff's Motion to Dismiss and Plaintiff's Memorandum in Support of Motion to Dismiss filed with this Court on February 1, 2008; and

d. award any other relief that it deems just and proper.

Dated: February 1, 2008

Respectfully submitted,

**NATIONAL COMMUNITY PHARMACISTS ASSOCIATION**

*By Counsel*

**MCGUIREWOODS LLP**
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, VA 22102
Tel: (703) 712-5000
Fax: (703) 712-5220
E-mail: jwilburn@mcguirewoods.com
aramana@mcguirewoods.com

/s/
John D. Wilburn (VSB No. 41141)
Anand V. Ramana (VSB No. 65852)

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2008, I served a true and correct copy of the foregoing pleading via U.S. Mail, postage prepaid, and electronic mail on:

R. Scott Caulkins, Esq. (Va. Bar No. 23584)
Sarah E. Moffett, Esq. (Va. Bar No. 72208)
**LECLAIRRYAN, P.C.**
225 Reinekers Lane
Suite 700
Alexandria, Virginia 22314
Tel: (703) 684-8007
Fax: (703) 647-5980
E-mail: scott.caulkins@leclairryan.com
sarah.moffett@leclairryan.com
*Attorneys for Strategic Domain, Inc.*

/s/

Anand V. Ramana
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102
Tel: (703) 712-5000
Fax: (703) 712-5050
Email: aramana@mcguirewoods.com
*Attorney for Plaintiff National Community Pharmacists Association*